IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DALIA OLIVAREZ and<br>ANDRES OLIVAREZ | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |
| V. | | |
| | | CIVIL CAUSE NUMBER 5:13-CV-00391-OLG |
| PAVEL M. BOZHINOV,<br>GENERAL CARGO, INC and<br>GET CARGO, INC. | | |

**DEFENDANTS, PAVEL M. BOZHINOV AND GET CARGO, INC.'S
RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY AND
REPORT OF DR. RICHARD V. BARATTA, Ph.D.**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS:

**PAVEL M. BOZHINOV, and GET CARGO, INC.,** Defendants in the above-styled and numbered cause, files their Reply to Plaintiffs' Motion to Exclude the Testimony and Report of Richard V. Baratta, Ph.D., and would show the Court as follows:

1. Plaintiffs filed their motion to exclude on August 7, 2014, and this response is filed timely. Plaintiffs' arguments in their motion to exclude appear to be as follows: (a) Biomechanical opinions are "'junk science' Texas courts and courts across the county have sought to eliminate." *See Plaintiff's Motion at 2*; (b) Dr. Baratta's opinions are based on "nothing more than his best logical guess" *See Plaintiff's Motion at 2*; and (c) Dr. Baratta's opinions "amount to nothing more than subjective speculation." *See Plaintiff's Motion at 2*. None of these arguments is supported under the facts and the law, and the Plaintiffs' motion should be denied.

**Applicable *Daubert* Law**

5.      This Court does not need a primer on the law relating to *Daubert* and its progeny.[1]   Generally speaking, in evaluating the admissibility of expert testimony, the court should "make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Hodges v. Mack Trucks Inc.,* 474 F.3d 188, 194 (5th Cir.2006). While the *Daubert* factors are particularly helpful in assessing scientific testimony, the proper factors depend on the nature of the issue, the particular expertise, and the subject of the testimony. *Kumho Tire Co. v. Carmichael,* 526 U.S. 136, 152 (1999).

6.      Importantly, "[t]he proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir.1998) (en banc); *see also Wells v. SmithKline Beecham Corp.,* 601 F.3d 375, 378 (5th Cir.2010) ("Although there are 'no certainties in science,' the expert must present conclusions 'ground [ed] in the methods and procedures of science.' " (quoting *Daubert* at 590).   At the most basic level, the *Daubert* factors act to ensure that an expert's opinion is grounded in more than "unsupported speculation or subjective belief." *Curtis v. M & S Petroleum, Inc.,* 174 F.3d 661, 668 (5th Cir.1999) (citing *Daubert,* 509 U.S. at

---

[1] The rule provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED.R.EVID. 702. The requirement that the testimony "assist the trier of fact" means the evidence must be relevant. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Mathis v. Exxon Corp.,* 302 F.3d 448, 460 (5th Cir.2002)

{02948699.DOCX / }

2

590). Thus, "[w]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 852 (Fed.Cir.2010). That is, a trial court is not permitted under *Daubert* to "transform a *Daubert* hearing into a trial on the merits." *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 250 (5th Cir.2002).

### Application of Law to the Facts

7.      As an initial matter, Plaintiff's apparent claim that biomechanics is "junk science" is complete rubbish.   Texas courts (and federal courts sitting in Texas) have allowed testimony of biomechanical experts on many occasions, as evidenced by their discussion in various opinions. *See e.g., City of Paris v. McDowell,* 79 S.W.3d 601, 607-08 (Tex. App. – Texarkana 2002, no pet)(biomechanical testimony allowed); *Reynoso v. Ford Motor Co.,* 2005 WL 5994183 *3 (S.D. Tex. 2005)(finding biomedical engineer was qualified to testify); *Idar v. Cooper Tire & Rubber Co.,,* 2011 WL 2412613 (S.D. Tex. 2011)(using biomedical testimony to find fact issue exists in summary judgment context). Thus, this is not a situation where a new or untested area of expertise is sought to be brought before the Court.[2]    Dr. Baratta has been found to be a reliable expert on biomechanics by many, many courts. *See Affidavit of Baratta* at 2.    Put simply, in cases such as the instant one, involving a sideswipe contact, the medical, biomechanical and

---

[2] Dr. Baratta's affidavit explains that biomechanics is the application of principles of mechanics or engineering to problems in medicine and biology.  Simply stated, the field of biomechanics involves the study of how human tissue behaves under load.  As one might expect, much of the literature in the field of biomechanics relates to the study of accidents and other events and how they result in injury to human tissue.  The field of biomechanics is widely accepted in the medical community, and biomechanical experts are commonly hired by medical schools. *See Affidavit of Baratta at 1.*

accident reconstruction experts can provide a unique analysis of the forces and mechanisms that would have been at play in the accident, in order to assist the trier of fact in making the decision of whether to believe or disbelieve plaintiffs' characterization of the accident and injuries, as well as its decision of whether to accept the treating physician's opinion on medical causation.

8.      Plaintiffs have challenged whether Dr. Baratta is "qualified" to testify as to the issues for which he is designated.[3]  To ensure his qualifications are properly before the Court, however, attached hereto as Exhibit 1 is the Affidavit of Dr. Baratta which fully outlines his qualifications and which details the support of this opinions in this case.  A copy of his curriculum vitae is attached as Exhibit 2.  Attached to the affidavit is his report in this case and various articles he relies upon and which support the opinions in his report.  Attached as Exhibit 3 is a true and correct copy of his deposition in this case.  The deposition provides a much better taste of Dr. Baratta's testimony than do the out-of-context snippets cited by Plaintiffs in their motion.  Finally, attached as Exhibit 4 are true and correct copies of photographs of the Plaintiff's vehicle after the accident which were authenticated in the deposition of the plaintiffs.

9.      The plaintiffs' first argument is that Dr. Baratta is essentially not qualified to render a "medical opinion" because he is not a doctor.  Plaintiffs' urge that the *Guevara* and *Roark* cases somehow stand for the proposition that only medical doctors can testify as to

---

[3] Plaintiff's challenging of Dr. Baratta's credentials is patently specious.  Dr. Baratta has multiple degrees in biomedical engineering, including his Ph.D., and has spent time on the faculty at LSU School of Medicine in New Orleans training orthopedic surgery residents and performing research in the field. He is also a licensed traffic accident reconstructionist, having completed a course in traffic accident investigation at Northwestern University in Illinois and being accredited by the Accreditation Commission for Traffic Accident Reconstructionists (ACTAR). He has been qualified as an expert in biomechanics and accident reconstruction approximately 60  times, including in the Southern Districts of Texas. *See Hermary v. GCA Services Group, Inc.*, 2009 WL 80696 (S.D. Tex. 2008)(Harmon, J.).

causation of injuries. *See* Plaintiff's Motion at 5.   Their argument is an incorrect statement

of Texas law, and is completely unsupported by the cases cited by Plaintiffs.   Specifically,

a review of the Supreme Court's holding in *Guevara* shows that the Court simply noted

that "expert testimony" was necessary to show injury causation that was outside the

knowledge of average jurors.   *See Guevara v.* Ferrer, 247 S.W.3d 662, 666 (Tex. 2007).

The Court did not engraft the phrase "by a doctor" to its holding, and confirmed that in

certain cases, expert testimony might even be unnecessary. *Id.*   Likewise, in *Roark*, the

court said only that "[e]xpert testimony is necessary when the alleged negligence is of

such a nature as not to be within the experience of the layman."   *See Roark v. Allen*,

633 S.W.2d 804, 809 (Tex. 1982).   Again, there was nothing *requiring* that the causation

evidence be provided by a licensed physician as Plaintiffs suggest.   Put simply, where

qualified to do so, even a non-physician can testify about medical issues.   *See Ponder*

*v. Texarkana Memorial Hosp.*, 840 S.W.2d 476, 477–78 (Tex.App.—Houston [14th

Dist.] 1991, writ denied) (non-physician with a doctorate in neuroscience, who conducts

research on the causes of neurological injuries and teaches neurophysiology,

neuroanatomy and neurochemistry to M.D.s and Ph.D.s, may qualify as a medical

expert on the cause of brain damage); *Bilderback v. Priestley*, 709 S.W.2d 736, 741

(Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (In a trial against a medical doctor who

prescribed physical therapy, a non-physician professor of biophysics who taught

physical therapy students could testify about "the mechanics, forces and effects of

weights used in administering physical therapy.").   The numerous cases where

biomechanical experts have been allowed to testify as to causation noted above further

belie plaintiffs' argument.[4]

---

[4] Finally on this point, it is an absolute misrepresentation of the testimony of Dr. Barrata for the Plaintiffs

{02948699.DOCX / }

5

10.    Plaintiffs' second argument is that   Dr. Baratta's testimony is unreliable because, *inter alia*, he performed no mathematical calculations, and did not "consider" the speed  or weights of the vehicles or personal details about the Plaintiffs in coming to his conclusion.    This argument misapprehends Dr. Baratta's actual opinions and ignores the nature of the accident itself.

11.  As opposed to the "high speed impact" claimed by Plaintiffs, the accident in this case involves a sideswipe that barely scratched the paint on one portion of the plaintiff's vehicle. *See Exhibit 4*.  There was no damage to the truck (and therefore nothing for Dr. Baratta to review), and the pictures of the Plaintiff's vehicle after the accident adequately demonstrate that – at best – the "impact" caused scuff marks on the door.  In fact, the driver's side review mirror was not even broken.  Despite this extremely minor impact, Plaintiffs have alleged several disc injuries as a result of the accident.

12.  Dr. Baratta's report illustrates that the glancing contact between the vehicles here could not have resulted in dynamic forces one would reasonably expect to cause the type of exaggerated hyperflexion or compression with forceful torsion that is necessary to herniate a disc in the absence of a fracture to the bony portions of the spine. *See Affidavit at 3-4.*   Simply stated, his opinions concern the scientific research in the field of biomechanics which has shown that discs do not herniate as a result of a single event as is commonly believed, unless there are fractures to the bony portions of the spine, or unless the event is so dramatic that the spine is literally doubled over and compressed and twisted in a manner far beyond normal physiologic movement.

---

to suggest that Dr. Baratta works for a firm "whose sole clientele consists of insurance companies and lawyers." *See Plaintiff's Motion at 6.*  Rather, the deposition testimony shows that Rimkus works for both defense and plaintiffs firms, for corporations, and for governmental agencies, on both civil and criminal matters.  *See Deposition of Richard Barrata at 9.*  If Plaintiffs are going to attempt to raise matters which are extraneous to the *Daubert* issues, they should at least get their facts correct.

13.     Plaintiffs argue that Dr. Baratta's opinions "ignore" the conclusions of their medical professionals.  Dr. Baratta points out, however, that although many physicians will relate a disc herniation to a single event, the actual scientific studies do not support this type of conclusion.  As here, physicians typically relate herniation to an accident simply based upon the history given by the patient, as in this case.  The physician's role is not to analyze the mechanics of a particular accident or to attempt to determine what forces were exerted upon the occupant of the vehicle.   Rather, the physician's emphasis is on diagnosis and treatment.   Therefore the fact that Plaintiff's treating doctors might have come to an incorrect assumption regarding causation is neither conclusive nor surprising (particularly regarding Dr. Gutzman, a well known "plaintiff's doctor).  In fact, in the case of *Hermany v. GCA Services Group, Inc.*, 2008 WL 80696 *3 (S.D. Tex. 2008)(Harmon, J.), the court found Dr. Baratta's testimony to be so helpful and persuasive that it accepted his opinion over that of the treating physician in a back injury case.   The trial judge there correctly noted that the treating physician's opinions were simply based upon the plaintiff's own narratives and not upon any scientific evidence or evaluation.  The jury in the instant case should be given the same opportunity that the trial judge had in *Hermany* to weigh the competing opinions from the treating physician and from Dr. Baratta and Dr. Anderson and determine whose opinions are more fully rooted in scientific evidence.

14.     Defendants respectfully suggest that the Rimkus analysis of the accident and whether it was consistent with the injuries complained of actually goes far beyond the analysis done by treating physicians when they are called upon to render an opinion on whether a particular accident or event caused a certain medical outcome, which is essentially the heart of Plaintiffs' complaint here (i.e., that Dr. Baratta did not take into account all of the medical history, individual ages, heights, weights, etc. of the plaintiffs)

and therefore that his opinion lacks a proper foundation).      Dr. Baratta explains in his affidavit that his opinions in the instant case are based upon generally accepted principles in biomechanics and biomedical engineering and are supported by studies that have been conducted in these fields. How Plaintiffs' physicians ultimately *treated* those injuries is simply irrelevant to how they were caused.[5]

15.      Dr. Baratta's affidavit references and incorporates several articles from authoritative treatises on back injuries.  They discuss studies which have been done on cadavers to determine the relationship between disc rupture and impact loading on the spine and which have led to the conclusion that disc ruptures do not occur as the result of a single loading event, unless there are associated massive body injuries to the spine. The author discusses the fact that earlier researchers have concluded that the vertebral body always broke before the adjacent disc incurred visible damage.  Even loads causing fracture of the vertebral body did not result in herniation or excessive bulging.

16.      Dr. Baratta explains that in order to render an opinion as a biomechanical and accident reconstruction expert in this case, it was necessary for him to try to evaluate the probable forces which were placed upon the human tissue of the occupants of the vehicle during the accident.  His review of the photographs as well as the anecdotal information available to him (including the depositions of the plaintiffs themselves) led to the conclusion that this was a shallow and mild sideswipe collision.  This conclusion was not a "logical guess" as urged by plaintiffs, but based on studies conducted with similar

---

[5] For example, Dr. Baratta references and attaches an excerpt from the treatise entitled "*Trauma Biomechanics: Introduction to Accident Injury*", which is a widely accepted authoritative treatise in the field of biomechanics.  The excerpt shows that it is a generally accepted principle in the field of biomechanics that disc herniations are usually the result of a slow degenerative process and not due to trauma unless the traumatic event results in fracture to the bone or significant hyper flexion and compression with forceful torsion beyond the parameters of normal physiologic motion.  Both of the plaintiffs are in their late 40's and would be expected to have such degenerative processes that each of us undergoes when we age.

{02948699.DOCX / }

accidents and vehicles, as well as the damage they cause to vehicles and the effects on passengers. *See Affidavit of Dr. Baratta.* Sideswipe collisions are fairly common and often result in *allegations* of injury. As such, they are of interest in the field of biomechanics and accident reconstruction. Dr. Baratta attaches several papers touching on the subject of such impacts and claims of injury. These papers were generally based upon studies in which the researchers intentionally caused low speed collisions between various types of vehicles (including large trucks and passenger vehicles such as those involved in the present case). Various scientific instruments were used to measure the specific dynamic effects of the impacts on the vehicles and their occupants. The results indicated that *even where there was significant damage to the passenger car*, there were only minor accelerations and speed changes being experienced by the car and its occupants. The studies illustrate that low comparative speed collisions typically do not result in high dynamic effects to occupants, even when there is a great size disparity between the objects involved. Here, there was virtually no damage to the car, therefore the likelihood of injury was even further reduced.

17.     The above studies – and others not listed here but provided in the affidavit and report – support the Rimkus opinion that the likelihood of the type of injuries claimed by Plaintiffs are extremely remote in a such a low impact sideswipe collision, particularly those involving a lack of substantial hyperflexion and compression and no fractures. There is more than enough peer-reviewed published material attached to and supporting Dr. Baratta's affidavit to belie Plaintiffs' bald, unsupported claims regarding the supposed lack of reliability of Dr. Baratta's testimony. Plaintiffs calling it a "violent" collision and claiming that they were "thrown off the road" are contrary to the actual physical evidence demonstrated by the pictures of the limited amount of damage to the Plaintiffs' vehicle.

How the supposed "failure to consider" such information (even if true) makes the opinions unreliable is not explained by Plaintiffs.

18.    In light of the foregoing discussion, it is obvious that the fields of biomechanics and accident reconstruction involve legitimate scientific studies that go far beyond the kin of an average juror, and even beyond what is normally involved when a physician is asked to render an opinion on causation in an accident case.  In this case, Dr. Baratta's analysis lead to the conclusion that minimal forces would have been exerted upon the Plaintiffs during the impact event, and would not have caused the supposed herniations.   There is no "analytical gap" between the qualifications of Dr. Baratta, the methodology employed and the opinions reached such that his opinions are unreliable. Defendants have shown that their experts' conclusions are "'grounded in the methods and procedures of science" and are not just speculation.  In fact, all of the challenges to Dr. Baratta are simply matters for cross-examination, rather than exclusion.

19.    In short, all of the underlying purposes of *Daubert* have been satisfied, and the Plaintiffs' motion should be denied in its entirety.

20.    To the extent believed necessary by the Court as a part of its gatekeeping function, Defendants **request an oral hearing** on this motion so that Dr. Baratta can appear and give testimony supporting his reliability.

### CONCLUSION

Plaintiffs' *Daubert* motion is, at best, nothing more than an attack on the accuracy of the conclusions that Dr. Baratta reached.  Whether an opinion is right or wrong is properly the subject of cross-examination, not a motion to exclude.  The Motion to Exclude should be denied and Dr. Baratta should be permitted to testify.

Respectfully submitted,

LARRY D. WARREN
State Bar No. 20888450
Attorney-In-Charge
**ATTORNEYS FOR DEFENDANTS**

OF COUNSEL:
NAMAN HOWELL SMITH & LEE, PLLC
10001 Reunion Place, Suite 600
San Antonio, Texas  78216
Telephone: (210) 731-6350
Facsimile:   (210) 785-2950

## CERTIFICATE OF SERVICE

I hereby certify that on the ___15___ day of August, 2014, the foregoing was filed with the Clerk of Court using the CM/ECF system, and was served on counsel as follows:

***E-Filing Notification System***
Dennis C. Postiglione
LAW OFFICES OF THOMAS J. HENRY
1515 S. Capital of Texas Hwy, Suite 200
Austin, Texas 78746
**ATTORNEY FOR PLAINTIFFS**

LARRY D. WARREN

{02948699.DOCX / }